495 P.2d 466

**STATE TAX COMMISSION OF the STATE OF ARIZONA et al., Appellants,**

**v.**

**TELEVISION SERVICES, INC., a dissolved Arizona corporation, et al., Appellees.**

**No. 10437.**

Supreme Court of Arizona,
In Banc.

March 30, 1972.

Rehearing Denied April 25, 1972.

Gary K. Nelson, Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for appellants.

Boyle & Brown, by James P. Boyle, Jr., David H. Palmer, Prescott, for appellees.

STRUCKMEYER, Justice.

This is an appeal by the State Tax Commission of Arizona from a judgment of the Superior Court of Yavapai County, Arizona, adjudging that the Tax Commission was not entitled to recover any taxes from Television Services and its stockholders arising out of a deficient income tax assessment in the amount of $12,676.76. Judgment of the Superior Court reversed.

On July 31, 1961, Television Services, Inc., a private corporation, was dissolved. All of its assets were transferred to its stockholders within one year, with the company filing a State tax return which did not report as taxable corporate income the capital gain from the sale of its corporate assets. On May 27, 1964, the Tax Commission made a deficiency tax assessment against Television Services. This was timely protested. After a hearing, the protest was denied and Television Services appealed to the Superior Court in Yavapai County, Arizona. The Tax Commission then sent notices of transferee assessments by certified mail to the individual stockholders and, on motion in the Superior Court, the stockholders were joined in the action. Both parties moved for summary judgment, and on June 1, 1970, the Superior Court entered its judgment favorable to appellees.

The principal question is whether the individual stockholders can be held personally liable for the asserted tax liability of Television Services. The answer to this question is controlled by certain subsidiary questions, the most critical of which is whether the Arizona Income Tax Act, A.R.S. Title 43, Chapter 1, as it existed in 1961 before amendment, must be construed to permit a tax on a capital gain by a corporation in the sale of its assets where within twelve months the proceeds of the sale were distributed to its stockholders in complete liquidation of the corporation. The answer to this question is to be found in a more detailed examination of the facts as applied to the then existing statutes.

At a shareholders' meeting on July 29, 1961, a plan of the corporation's president to sell the principal assets of the corporation was ratified and the decision was made to dissolve the corporation. It was decided to distribute the assets to the individual stockholders in proportion to their ownership of shares of stock, the assets then being principally the cash derived from the sale of the corporate property. All the stockholders agreed in writing "that in proportion to the ownership of stock in the corporation they will be liable for all contingent and unknown liabilities,

including federal income tax, of the corporation." As stated, the cash received from the sale of the corporate assets and all of the non-cash assets were distributed within a year.

A.R.S. § 43-197 provides that the Corporation Commission may not file any decree by which the existence of any corporation shall be terminated unless the corporation first obtains a certificate from the Tax Commission that all taxes imposed by Title 43 of the Arizona Revised Statutes have been paid or secured. Television Services, on September 13, 1961, wrote the Tax Commission requesting such a certificate. In reply, the Commission answered that no certificate could be granted until a final corporate income tax return was filed. Television Services filed its final return on November 6, 1961; *but it did not report as taxable income the capital gain on the sale of the assets of the preceding July.* Finally, after an audit of the return and a few days before the expiration of the statute of limitation, the Tax Commission, on May 27, 1964, assessed a tax, later reduced to $12,676.76, against the corporation for the capital gain from the sale of the corporate assets prior to dissolution.

By A.R.S. § 43-151, subsec. a, the gain in general from the sale of corporate property is the excess of the amount realized therefrom over the adjusted cost as provided by A.R.S. § 43-153, subsec. b. By § 43-152, subsec. a, the entire amount of the gain must be recognized, except as specifically provided therein. Arizona computes its income taxes similar to the federal government and its statutes were derived principally from the federal statutes, *see,* 26 U.S.C.A. (I.R.C.1954), although the source of some statutes is given as California, A.R.S. § 43-199, subsec. d. In 1961, Arizona did not have a provision in its income tax act comparable to 26 U.S.Code § 337 exempting the gain from the sale of corporate assets where complete liquidation of such assets takes place within twelve months.

Section 337 was enacted by Congress of the United States in 1954, after the decision of the Supreme Court of the United States in Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). There, it was held that on a sale of corporate assets, followed by dissolution, a tax could be laid on the gain of the corporation and another on the gain to the individual stockholders who received the assets on distribution. Arizona, in 1969, adopted the same law, and it now appears as § 43-152, subsec. *o,* par. 1, A.R.S. 13, as follows:

"(*o*) Gain or loss on sales or exchanges in connection with certain liquidations

1. General rule. If

(A) A corporation adopts a plan of complete liquidation after December 31, 1969, and

(B) Within the twelve-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

Then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such twelve-month period."

As can be seen, the statute was specifically made prospective to corporations adopting a plan of liquidation after December 31, 1969.

■ We do not think the statute is merely a clarification of Arizona's previous acts. True, A.R.S. § 43-155, subsec. c, par. 1, reading:

"1. In general. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, * * * [t]he gain * * * to the distributee resulting from the exchange shall be determined under § 43-151 and shall be recognized only to the extent provided in § 43-152."

does not mention that a liquidated corporation must pay a tax, placing a tax only on the distributee. But, by § 43–102, subsec. b, a tax is required to be paid by every corporation upon its entire net income unless otherwise provided by law. Income is the gain derived from capital, from labor, or from both, and is to be taken to include profit gained through a sale of capital assets, Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 529 (1920).

 The language of § 43–152, subsec. *o*, par. 1, quoted supra, is plain and unambiguous and can be given but one meaning; namely, that where a corporation adopts a plan of liquidation after December 31, 1969, no gain in income to the corporation is recognized if distribution is within a twelve-month period thereafter. Tacitly, a gain is recognized on every plan for liquidation adopted prior to December 31, 1969; otherwise there would be no purpose in specifying the starting date of December 31, 1969. Where the meaning of a statute does not lead to an impossibility or an absurdity such as could not have been contemplated by the Legislature, courts follow that meaning even though the result may be harsh, unjust, or a mistake in policy. Garrison v. Luke, 52 Ariz. 50, 55–56, 78 P.2d 1120, 1122 (1938).

 The statute, § 43–155, subsec. c, is an integral whole, sufficient within itself to place a tax on the distributees of a corporation's assets on liquidation. It is not ambiguous because it is addressed to the gains of stockholders on liquidation only.

 This is not a case of unconstitutional double taxation. Double taxation, as appellees use the phrase, is a fact of life of which all are familiar. Corporations, for example, must pay taxes on their income, and when dividends are declared, the stockholders must pay a tax on the same income. A corporation and its stockholders are separate and distinct entities and the earnings of each are plainly separate and distinct subjects of taxation. West v. Tax Commission, 207 Wis. 557, 565, 242

N.W. 165, 168 (1932). As stated by Justice Holmes, "The Fourteenth Amendment no more forbids double taxation than it does doubling the amount of a tax; short of confiscation or proceedings unconstitutional on other grounds." Fort Smith Lumber Co. v. Arkansas, 251 U.S. 532, 533, 40 S.Ct. 304, 305, 64 L.Ed. 396, 398 (1920).

 By A.R.S. § 43–197, subsec. a, the Tax Commission is required to issue a clearance certificate within 30 days of a corporation's request or to advise the corporation of the amount of its unpaid tax. The Tax Commission did not issue a clearance certificate within 30 days of Television Services' request, nor did it advise Television Services of the amount. That the Tax Commission did not advise Television Services of the amount of the unpaid tax is no defense to its collection. There can be no estoppel against the state by the failure of the Tax Commission to attempt to collect taxes. Arizona Tax Commission v. Dairy & Consumers Co-operative Ass'n, 70 Ariz. 7, 14, 215 P.2d 235, 240 (1950). Moreover, the statute provides that "The issuance of the certificate shall not relieve the corporation or any individual from liability for any taxes, penalties, or interest imposed by this title." Even if the Tax Commission had issued a clearance certificate to the corporation within 30 days or erroneously calculated the unpaid taxes at less than the correct amount, Television Services would not have been relieved from liability. *A fortiori,* the failure to issue a certificate or advise the corporation of the amount of its unpaid taxes should not relieve it of its tax liability.

 Neither were the stockholders in this case denied due process of law because they were not joined as parties prior to a determination of the tax by the Tax Commission. The stockholders were aware that the Tax Commission had not issued a clearance certificate to Television Services and was questioning the return. They plainly accepted the risk of a declaration of a subsequent corporate tax liability. When they were joined as parties on re-

240

view before the Superior Court, they had, to the utmost limit, the opportunity to litigate the question of both the corporate and their individual liability. No point is made that the tax claimed is in any way incorrect, nor is there any suggestion that had the stockholders been brought into the case sooner the taxes would have been less.

█ We find no merit to the argument founded upon the fact that the Arizona Corporation Commission revoked the corporation's certificate of incorporation, thereby causing its dissolution. If we assume that the revocation of the certificate of incorporation dissolved the corporation, we still do not understand how this could relieve it or its stockholders of just debts then due and unpaid.

The judgment of the Superior Court is vacated and this cause is reversed and remanded for proceedings consistent with this decision.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.