512 P.2d 16

**ARIZONA STATE TAX COMMISSION, a body corporate and politic, and Waldo L. DeWitt, John M. Hazelett and Robert A. Kennedy, as members of and constituting said Arizona State Tax Commission, Appellants,**

v.

**Castle O. REISER, Appellee.**

**No. 10886–PR.**

Supreme Court of Arizona, In Banc.

July 6, 1973.

Rehearing Denied Sept. 18, 1973.

Gary K. Nelson, Atty. Gen., by Leonard M. Bell, Former Asst. Atty. Gen., Phoenix, for appellants.

Jennings, Strouss & Salmon by Charles L. Strouss, Jr., Lee E. Esch, Phoenix, for appellee.

STRUCKMEYER, Justice.

This case comes to us on a petition for review of a decision of the Court of Appeals affirming a summary judgment for plaintiff-appellee, 16 Ariz.App. 374, 493 P. 2d 920 (1972), as supplemented in 17 Ariz. App. 135, 495 P.2d 1342 (1972). The judgment of the Superior Court affirmed. Opinions of the Court of Appeals vacated.

Appellee, Castle O. Reiser, is employed by the Board of Regents of the Universities and State College of Arizona as a professor of engineering at Arizona State University. He executed annual nonrevocable written salary reduction agreements with the Regents for the fiscal years 1964–1965, 1965–1966, 1966–1967, and 1967–1968 (Appendix 1). The agreements called for the purchase of nonforfeitable annuities for the appellee by the Regents in the amount of the salary reductions. Nonforfeitable annuity contracts were purchased by the Regents pursuant to the agreements. All purchases of annuities were with funds contributed by Reiser pursuant to the agreements for a reduction in salary.

Appellee filed Arizona state income tax returns but did not report as income the

amounts of his reduced salary used by the Regents to purchase the annuities. The State Tax Commission notified him that it proposed to assess additional income taxes for the calendar years 1965, 1966 and 1967, with the explanation that the annuity payments were taxable as income under state law. Pursuant to A.R.S. § 43–177, subsec. f, Reiser brought this action in Superior Court as an appeal of the Tax Commission's denial of his protest to a deficiency assessment. By count two of his amended complaint, he also sought declaratory relief as a class action, presumably pursuant to A.R.S. § 12–1831 et seq. The cause was submitted on stipulated facts with motions for summary judgments by both parties. The trial court granted appellee's motion and denied the Commission's motion. Since no point is made on appeal as to the propriety of joining a class action with an appeal from a Tax Commission order, we express no opinion either approving or disapproving the judgment as a judgment in a class action.

Two questions are presented, the first of which is whether payments made pursuant to salary reduction agreements, as here, are excluded from taxation as gross income under Arizona's statute § 43–112, subsec. b, par. 6.

Section 43–112, subsec. b, par. 6 provides, insofar as germane to this question:

" [I]f an annuity contract is purchased for an employee by an employer * * * the employee shall include in his income the amounts received under such contract for the year received. If the employee paid any of the consideration for the annuity, the annuity shall be included in his income * * *."

The quoted provision of § 43–112, subsec. b, par. 6 originated as Chapter 65, § 12(b)(6), Laws of 1954. It was derived from and is almost identical in language to the Federal Internal Revenue Code of 1939, as amended in 1942, § 22(b)(2)(B). *See* Revenue Act of 1942, ch. 619, § 162(c)(Oct. 21, 1942), 56 Stat. 866. Arizona derived its

income tax statutes principally from the federal statutes, State Tax. Comm'n. v. Television Services, Inc., 108 Ariz. 236, 238, 495 P.2d 466, 468 (1972). Hence, in determining the meaning and intent of Arizona's enactment, its historical background should be considered, *cf.* Mesa v. Killingsworth, 96 Ariz. 290, 295, 394 P.2d 410, 413 (1964).

The United States Senate Finance Committee, in reporting on the amendment of 1942 creating the exclusion in question, stated:

"If an annuity contract is purchased for an employee * * *, the employee will not be required to include in his income the amount paid by his employer for such annuity contract until he actually receives or there is made available to him the amounts required to be paid under the annuity contract, * * *." S. Rep. No. 1631, 77th Cong., 2d Sess. 141 (1942).

The Conference Report Statement of the House Managers adds little to this explanation, H.R.Rep. No. 2586, 77th Cong., 2d Sess. 52–53 (1942), and the Treasury Department Regulations issued shortly thereafter merely restated the Senate Finance Committee's explanation, Treas.Reg. 111, § 29.22(b)(2)–5 (1943), 8 Fed.Reg. 14899 and Treas.Reg. 103, § 19.22(b)(2)(B)–1 (1943), T.D. 5278, Par. 5, 1943 Cum.Bull. 488. As an aside, it may be said that Congress' enactment was designed to permit the taxation of certain corporate employees in a similar manner to those employees receiving benefits under retirement or pension plans.

As late as 1953, the Internal Revenue Service ruled:

"An amount paid by an employer * * * as an insurance premium for the purchase of an annuity contract of the type referred to in section 22(b)(2)(B) of the Code is not required to be included in the income of the employee for whom the annuity is purchased. The employee will be taxed upon the basis of the amounts he actual-

ly receives under the annuity contract *and at the time he receives such annuity payments.*" Rev.Rul. 181, 1953–2 Cum. Bull. 111 (emphasis added).

It is therefore clear that at the time of the enactment of § 43–112, subsec. b, par. 6, the only condition for exclusion from taxation as gross income and deferment until the year of receipt was that the employer purchase the annuity contract on behalf of his employee at least insofar as there was a bona fide attempt to set up pension or retirement benefits.

Shortly after adoption by Arizona of the federal Act, the Internal Revenue Service published a ruling stating that it would *not* treat income withheld by an employer pursuant to salary reduction agreements as excludable from the employee's gross income.

"It is held that where annuities are purchased by an organization exempt from Federal income tax under section 101(6) of the Code for employees who, under the above circumstances, have requested that their salary payments be decreased by certain amounts and that such amounts be applied toward the purchase of annuity contracts, the inclusion in gross income of an employee of the amounts thus paid by the employer for the annuity contracts is not deferred until the year of receipt as provided in section 22(b)(2)(B) of the Code. Revenue Ruling 181, C.B. 1953–2, 111, relating to amounts contributed by the employer is not applicable to the circumstances expressed herein." Rev.Rul. 54–267, 1954–2 Cum. Bull. 59, *declared obsolete*, Rev. Rul. *72–92*, 1972–1 Cum.Bull. 408.

The I.R.S. gave no explanation for the change in its ruling.

Two reasons have been advanced by appellant against allowing an exclusion for annuities purchased through salary reduction agreements: (1) that the annuities purchased are not "mere supplements" to income, and (2) that the funds used in the purchase are income constructively received by the employee.

The "mere supplement" rule is derived from a promulgation by the Treasury Department under Treas.Reg. § 1.403(a)–1 (a)(3), T.D. 6203, 1956–2 Cum.Bull. 249–50, September 24, 1956. Those parts which we think are particularly applicable provide:

"TAXABILITY OF BENEFICIARY UNDER A QUALIFIED ANNUITY PLAN.—(a) An employee or retired or former employee for whom an annuity contract is purchased by his employer is not required to include in his gross income the amount paid for the contract at the time such amount is paid * * * if—

* * * * * *

(3) The annuity contract is purchased by an employer * * * *provided the purchase of the annuity is merely a supplement to past or current compensation.* For the purpose of this subparagraph, whether the purchase of an annuity contract is merely a 'supplement to past or current compensation' is to be determined by all the surrounding facts and circumstances. One of the pertinent facts to be taken into consideration is the ratio of the consideration paid by the employer for an employee's contract to the amount of his past or current compensation. For example, if the annual premium paid for an employee's contract is $1,000 and his annual salary is $10,000, the ratio indicates that the premium paid for the contract is merely a supplement to the employee's current compensation. If, however, an employee receives no current compensation, or the annual premiums paid for his annuity contract approximate his annual salary, the amount paid for his contract will be considered to be current compensation and taxable to the employee in the year in which it is paid by the employer. *Other pertinent considerations are whether the annuity contract is purchased as a result of an agreement for a reduction of the employee's annual salary,* or whether it is purchased at his re-

quest in lieu of an increase in current compensation to which he otherwise might be entitled. *In such cases, the amount paid for the contract shall also be considered to be current compensation.*" (Emphasis added.)

Since the limitation that the purchase of annuities must be a mere supplement to past or current compensation was not contained in the 1954 Internal Revenue Code, it was plainly an attempt to close by administrative action a tax shelter.

■ This tax shelter was specifically considered by Congress prior to adoption of the Technical Amendments Act of 1958. The Senate Finance Committee commented:

> "It is understood that certain of these organizations [educational, charitable and religious] are paying selected employees all, or almost all, of their compensation in the form of annuities. Usually these are part-time employees of the organization who derive their principal income from other employment, and desire to be compensated by the organization in the form of an annuity rather than money, as a means of deferring income taxes on funds they in any case intend to save." S.Rep. No. 1983, 85th Cong., 2d Sess. 36 (1958).

The Technical Amendments Act, while limiting the size of the annuity which an employer could purchase for an employee to 20% of the employee's compensation, obviously rejected the mere supplement rule as formulated by the Treasury Department in its regulation quoted *supra.* S.Rep. No. 1983, 85th Cong., 2d Sess. 36 (1958).

This state has not amended § 43–112, subsec. b, par. 6 to conform to the 1958 federal Act, but the Legislature approved the participation by the employees of public educational institutions in annuities by reduction of salary agreements when in 1963 it adopted a statute specifically authorizing the boards of educational institutions to participate in the federal tax sheltered annuity plan. A.R.S. § 15–1198, as amended by Laws of 1969, Ch. 19, § 1, provides:

> "A. Employees of the public schools and junior colleges under boards of trustees, accomodation school employees under the county superintendents, employees of the universities and state colleges under the board of regents and all other certificated and noncertificated employees of the public schools of the state, including those located at state institutions, may participate in the federal tax sheltered annuity plan as provided by title 26, section 403, U.S.Code, as amended, if the governing board approves.

> B. Upon election by any such employee to participate in the federal annuity plan, the board of trustees, county school superintendent, board of regents, or other governing body or employer of the employee, shall invest an amount *to be reduced from the regular annual salary of the employee,* as the employee may authorize, in annuities as is provided by title 26, section 403, U.S.Code, as amended. * * *." (Emphasis added.)

The doctrine of constructive receipt is explained by Treas.Reg. § 1.451–2(a) (1964):

> "Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is * * * made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. *However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.*" (Emphasis added)

The doctrine was developed for the purpose of preventing a cash-basis taxpayer from avoiding the realization of income by deliberately refusing to receive it. *See,* 2 J. Mertens, Law of Federal Income Taxation, § 10.01, Ch. 10 at 2 (1967).

It is argued that the doctrine of constructive receipt is applicable here for the

reason that if the funds used to purchase an annuity are available to an employee without substantial restrictions at the time he elects to purchase the annuity or at the time of purchase, they are as much the employee's as if actually received prior to the purchase, and if the funds used to purchase the annuity are the employee's, he is not entitled to the deferred tax as allowed by A.R.S. § 43–112, subsec. b, par. 6.

The doctrine of constructive receipt was exhaustively examined in Zeltzerman v. Commissioner, 34 T.C. 73, aff'd per curiam, 283 F.2d 514 (1st Cir. 1960). Zeltzerman, who was a physician specializing in radiology, rendered services to two hospitals pursuant to oral agreements under which he was entitled to compensation based upon a percentage of the X-ray charges made by the hospitals. Petitioner proposed the purchase of annuities to the boards of trustees of the two hospitals through their administrators. Thereafter, for more than a year, he received no further payment of compensation by check or cash and the funds which he formerly had received were used by the hospitals to purchase annuity contracts naming petitioner as annuitant. Later, petitioner decided that he did not want his entire earnings invested in annuities and made arrangements to have a portion paid to him at the year's end, and the remainder used to purchase annuities. One of the hospitals also paid the petitioner the interest which accrued on his monthly earnings while they were accumulated in a trust savings account.

The federal tax court concluded that Congress intended a deferment of income taxes where the annuity was purchased wholly or partially out of the employer's funds, but not where it was purchased from the current compensation of an employee available to him without substantial limitation or restriction. It was held that the annuities in question were purchased at the petitioner's direction with income subject to his unfettered command, that is, with compensation which he was free to enjoy at his option without limitation or restriction.

The Tax Commission relies on Llewellyn v. Commissioner of Internal Revenue, 295 F.2d 649 (7th Cir. 1961), aff'g, 19 C.C.H. Tax Ct.Mem. 1023 (T.C.Memo 1960–197, Sept. 22, 1960). There, Llewellyn, a pathologist for two hospitals in Wisconsin, received a stated percentage of the monthly gross receipts of the hospital laboratories. In 1953, both hospitals agreed to subtract stated sums from the percentage of the monthly gross receipts and to purchase with these funds annuity policies. It was Llewellyn's position that his compensation was decreased by the amount of the deductions for the annuities. It was the Commissioner's position that his compensation was not reduced but that a portion thereof was simply diverted in accordance with his directions so that the sums paid for annuities were payments in effect made by Llewellyn himself.

The Circuit Court of Appeals found that the amounts paid out of Llewellyn's compensation were income constructively received by him and, as such, constituted taxable income. The court said:

"In effect, Dr. Llewellyn made anticipatory assignments of part of his income * * *." 295 F.2d at 651.

We are not, however, disposed to follow the holding in *Llewellyn*. If the concept of anticipatory assignments is pursued to its logical conclusion, then all annuities purchased through any agreement, such as a salary reduction or an agreement to forego a cash raise, would be earned income subject to immediate taxation. The result would be a virtual repeal of Congress' enactment. We think the proper interpretation of constructive receipt is that set forth in 2 J.Mertens, Law of Federal Income Taxation, § 10.02, Ch. 10 at page 7 (1967). There, Mertens states:

"A mere promise or obligation to pay is insufficient to constitute a constructive receipt. There must be a present right to receive." (footnote omitted)

We therefore hold that the promise to pay a salary in the future by an employer does not constitute a constructive

receipt of that salary by the employee until there is an actual present right to receive the compensation. The salary reduction agreements in the instant case completely removed the control of the funds from the employee. There was no present right to receive such funds, and the doctrine of constructive receipt has no application.

This brings us to the second question presented by the Tax Commission. A.R.S. § 43–112, subsec. b, par. 6, quoted in part *supra,* provides that "if an annuity contract is purchased for an employee by an employer *exempt under § 43–147, subsec. a, par. 4* the employee shall include in his income the amounts received under such contract for the year received." (Emphasis added.) Those employers exempt under § 43–147, subsec. a, par. 4 are "Corporations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *." Section 43–147, subsec. a, par. 4 had its federal counterpart in § 101(6) of the Federal Internal Revenue Code of 1939.

Petitioner's position is that the Board of Regents is not an employer enumerated as exempt under § 43–147, subsec. a, par. 4, in that it is not a corporation.

In 1960, the Internal Revenue Service in construing the federal counterpart limited the public schools whose employees could qualify for deferred tax treatment of annuity compensation to those which were organized as entities separate from a state or municipal government, possessed only the purposes and powers of an enumerated tax exempt corporation, and had filed an application for exemption with the Internal Revenue Service, Rev.Rul. 60–384, 1960–2 Cum.Bull. 172. In response to that ruling, Congress passed in 1961 an amendment to § 403(b) which, in effect, overruled the Internal Revenue Service. Act of October 4, 1961, P.L. 87–370, § 3, 75 Stat. 801. The Senate Finance Committee reported that it regarded the amendment as a clarification of existing law necessitated by the Internal Revenue Service ruling:

"The committee felt it was not reasonable to take the view that Congress ever intended that State or local governmental units should be required to file application with the Commissioner for classification as a tax-exempt organization when the Federal Government has no power under the Constitution to tax the State or local government in the first place. Since your committee viewed this amendment as a clarification of the law, it is made applicable to taxable years beginning after December 31, 1957, the same effective date as section 403(b)." S.Rep. No. 730, 87th Cong., 1st Sess. 2–3 (1961). U.S.Code Cong. & Admin. News p. 3254.

It was, of course, natural that the federal counterpart to § 43–147, subsec. a, par. 4 was directed to non-profit corporations because state agencies established for similar purposes were already tax exempt, that is, not taxable by the Federal Government. But the exemption being limited to corporations organized and operated exclusively for religious, charitable, scientific, literary, educational and the like purposes, when adopted by Arizona left a hiatus in that those employees, such as Reiser, working directly for a tax-exempt agency of the state could not participate in the tax shelter plan by salary reduction agreements.

██ ██ We, however, think that there was implied amendment in 1963 to § 43–112, subsec. b, par. 6 when the Legislature enacted A.R.S. § 15–1198, quoted *supra.* While the amendment of statutes by implication is not favored, 1A, Sutherland, Statutes and Statutory Construction, § 22.13 at p. 139 (4th ed. by Sands 1972), an act of the legislature not amendatory in character, but original in form, and complete in itself, exhibiting on its face what the law is to be, its purpose and scope, is valid, notwithstanding it may, in effect, change or modify some other law upon the same subject. State Tax Comm'n v. Shattuck, 44 Ariz. 379, 390, 38 P.2d 631, 636 (1934).

A careful scrutiny of A.R.S. § 15–1198 leads to the conclusion that the Legislature of this state in 1963 intended that employees of the universities and state colleges, as well as other employees of the schools of the state, have the same benefits as the employees of private, non-profit, educational corporations.

A.R.S. § 43–112, subsec. b, par. 6 and A.R.S. § 15–1198 should be read and considered together and both should be given effect where possible. Scottsdale v. McDowell Mountain Irrigation and Drainage Dist., 107 Ariz. 117, 121, 483 P.2d 532, 536 (1971); Arizona State Highway Comm'n v. Nelson, 105 Ariz. 76, 83, 459 P.2d 509, 516 (1969); Trickel v. Rainbo Baking Co., 100 Ariz. 222, 228, 412 P.2d 852, 855 (1966).

■ ■ Nor are we convinced by the Tax Commission's argument that the deferment of taxation by the employee to the year of receipt of the income should be limited to taxes imposed by the Federal Government. We think this achieves an absurd result. Courts should give to a statute a sensible construction and if possible should avoid absurd conclusions. Robinson v. Lintz, 101 Ariz. 448, 452, 420 P.2d 923, 927 (1966); Frye v. South Phoenix Volunteer Fire Co., 71 Ariz. 163, 168, 224 P.2d 651, 654 (1950); State v. Airesearch Mfg. Co., 68 Ariz. 342, 348, 206 P.2d 562, 567 (1949).

We therefore hold that the Legislature in adopting § 15–1198 amended § 43–112, subsec. b, par. 6 so that there is included within its provisions annuity contracts purchased for an employee by a state educational agency.

Judgment of the Superior Court affirmed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.

## APPENDIX 1

### "ARIZONA STATE UNIVERSITY
Tempe, Arizona

SALARY REDUCTION AGREEMENT

To: Comptroller
    Arizona State University
    Tempe, Arizona

Pursuant to the Resolution entitled 'Resolution Adopting Annuity Contracts Program' adopted by the Board of Regents of the Universities and State College of Arizona at its meeting on December 29, 1962, you are hereby authorized and instructed to reduce my salary for the (fiscal) (academic) year 1964–1965 by the amount of *$1,800* from *$13,600* to *$11,800.*

It is understood and agreed that *Arizona State University* will purchase for me a non-forfeitable annuity from *TIAA–CREF* and will contribute upon account thereof the sum of *$1,800* for such (fiscal) (academic) year.

at rate of $75.00 per month to TIAA)
at rate of $75.00 per month to CREF)
$150.00 per month for 12 months

You are further authorized and instructed to deduct the additional sum of *$252.00* in Federal Withholding Tax during 1964–65.

I acknowledge that I have read the aforenamed Resolution and I agree to be bound thereby and by such later and reasonable regulations as may be adopted by said Board in the premises. * * *"