[Civil No. 2356. Filed December 31, 1926.]

[252 Pac. 515.]

In the Matter of the Petition of WAYNE HUBBS, Treasurer of the State of Arizona, for Special Letters of Administration on the Estate of THOMAS HIGGINS, Deceased. THE HIGGINS ESTATE, a Corporation, and MARGARET A. KEARNEY, Appellants, v. WAYNE HUBBS, Treasurer of the State of Arizona, Appellee.

Messrs. Ellinwood & Ross, Mr. Martin Le Boutillier, Mr. Maurice Blumenthal and Mr. James S. Casey, for Appellants.

Mr. A. R. Lynch, Special Counsel for Inheritance Tax Collector, for Appellee.

LOCKWOOD, J.—For many years Thomas Higgins was a resident of the Bisbee mining district in Cochise county, first as a prospector, then as a locator of claims, a miner and finally a mine operator. During the last decade of the past century he accumulated a substantial fortune, and retired to California to spend his old age in well-earned repose. About the time Higgins took up his residence in California that state adopted the then somewhat new theory of taxation that a tax of a greater or less amount should be levied upon the right of succession to the estates of decedents. Like many other men of substantial fortune, Higgins viewed with alarm the probability that, after his death, any considerable portion of his estate should pass into the coffers of the state, by and under whose protection he had acquired and held it, rather than enrich his numerous relatives. He adopted, therefore, a plan conceived by the fertile brain of some astute counsel and used in many states in an attempt to evade the operation of inheritance tax laws. In 1914 he organized a corporation under the laws of California, which was styled "the Higgins Estate," hereinafter referred to as the corporation. All of his California properties were deeded to this corporation, and in the course of the next two years he distributed all of

its stock in the form of gifts to various collateral relatives. He, however, held all of such shares of stock in escrow, with himself, and later a trusted member of his family, as escrowee, and further provided that no stock could be transferred except to a member of the family. He had retained the title to certain mining claims in Bisbee, Arizona, in his own name, however, and about 1917 these claims became of great value. He thereupon sold them to the corporation for the consideration of a certain number of shares of its stock. The corporation then deeded to him a life interest in the mines, and he gave all the stock which he had received from it in exchange for the title to the mines to his various heirs.

Higgins died in March, 1920, in the city of Los Angeles, and the gifts of stock in the corporation made by him to his various heirs were taxed under both the federal Inheritance Act and the law of California. Thereafter the state of Arizona attempted to collect an inheritance tax upon the transfer of the Higgins mines made to the corporation in 1917, on the theory that it was in effect a transfer made in contemplation of the death of the grantor and an attempt to evade the inheritance tax laws of Arizona.

No effort having been made by the corporation or any of the heirs of Higgins to pay any inheritance tax in Arizona, or to administer upon his estate, Wayne Hubbs, as treasurer of the state of Arizona, made application for special letters as administrator of the estate of Thomas Higgins, under the provision of section 17, chapter 26, of the Session Laws of 1922. The Higgins Estate and Margaret A. Kearney, one of the heirs of Higgins, appeared and resisted the issuance of such letters, first, on the ground that no inheritance tax whatever was due upon the estate of Thomas Higgins, and, second,

that the state treasurer was not a proper party to receive special letters of administration. After a full hearing, the trial court ordered that special letters be issued and appellants brought such order here for review.

There are two errors assigned which we will consider in their order. The first is that at the time the petition was filed "there was no law in effect in the state of Arizona by the virtue of which an inheritance tax could be imposed upon such estate."

In order that we may discuss the first assignment intelligently, it will be necessary for us to review briefly the history of our inheritance tax laws. While Arizona was a territory, the inheritance tax was unknown, but the first special session of the first state legislature passed a law imposing such a tax, which was carried over, in substance, into the Revised Statutes of 1913. This law was amended in 1918 (Laws 1st Sp. Sess. 1918, p. 3) and 1921 (Laws 1921, p. 176), but none of these amendments affect the questions involved in this appeal. In 1922, however, the legislature, deeming that a general revision of the entire subject was advisable, adopted chapter 26, Session Laws of 1922, its title reading as follows:

"To establish a tax on gifts, legacies, inheritances, bequests, devises, successions and transfers, to provide for its collection and to direct the disposition of its proceeds; to provide for the enforcement of liens created by this act and by any act hereby repealed and for suits to quiet title against claims of liens arising hereunder, or under an act hereby repealed, to be known as the 'Inheritance Tax Act'; and to repeal chapter 96, Session Laws of Arizona 1921; and chapter XIII, title 49, Revised Statutes of Arizona 1913, Civil Code, known as the 'Inheritance Tax Act,' and all amendments thereto, and to repeal all acts and parts of acts in conflict with this act."

Section 1 of the act reads in part as follows:

"Section 1. A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest, or equity therein, or income therefrom in trust or otherwise, to any person, association or corporation, except county, town or municipal corporations within the state, for strictly county, town or municipal purposes, and corporations of this state organized under its laws, or voluntary associations, organized solely for religious, charitable or educational purposes, which shall use the property so transferred exclusively for the purposes of their organization, within the state in the following cases, except as hereinafter provided:

"(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) When a transfer is by will or intestate law of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death.

"(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within six years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed to have been made in contemplation of death within the meaning of this section.

"(4) Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act; provided, that property or estates which have vested in such persons or corporations before this act shall take effect, shall

not be subject to a tax; and provided, further, that contingent interests created by the will of any person who died prior to the passage of this act shall not be taxed.''

This act was approved by the Governor on the first day of April, 1922, but carried no emergency clause, and therefore did not take effect till ninety days from the close of the session of the legislature. Const. Ariz., art. 4, § 1, subd. 3.

The legislature, however, in the next few days, becoming doubtful as to the interpretation which might be placed upon the act in just such cases as the present one, passed chapter 26A, which reads as follows:

''Be it enacted by the Legislature of the state of Arizona:

''Section 1. That Senate Bill No. 8 enacted by the Fifth Legislature of the state of Arizona at its first special session, approved April 1, 1922, entitled:

'' 'An act to establish a tax on gifts, legacies, inheritances, bequests, devises, successions and transfers, to provide for its collection and to direct the disposition of its proceeds; to provide for the enforcement of liens created by this act and by any act hereby repealed and for suits to quiet title against claims of liens arising hereunder, or under an act hereby repealed, to be known as the ''Inheritance Tax Act''; and to repeal chapter 96 Session Laws of Arizona, 1921; and chapter XIII, title 49, Revised Statutes of Arizona 1913, Civil Code, known as the ''Inheritance Tax Act,'' and all amendments thereto, and to repeal all acts and parts of acts in conflict with this act,' be and it is hereby amended, by adding thereto a new section, to be designated as section 30 of said act, which section 30 shall be in the words and figures following, to wit:

''Section 30. No inheritance taxes which have accrued or which may accrue under the provisions of the laws repealed by section 29, hereinabove set forth, shall be deemed to have been waived or relin-

quished by the state of Arizona, and the liability for such taxes and the lien securing the payment thereof, as well as all inheritance taxes that may hereafter accrue by reason of any transfer made under the laws repealed as aforesaid, are hereby continued in full force and effect, after the repeal provided in said section 29 shall go into effect, until such taxes so accrued or to accrue, as aforesaid, shall have been determined and collected, and all property transferred under the laws repealed as aforesaid which may hereafter be found to be taxable under the provisions of such laws, shall continue to be liable for the taxes as provided in such law. Provided, however, that after the said repeal shall go into effect, the procedure in all tax matters arising under this section shall be as near as may be in accord with the provisions of said Senate Bill No. 8.''

This act, which also carried no emergency clause, was approved on the thirteenth day of April, and took effect, if at all, simultaneously with chapter 26, *supra*.

Briefly summarized, the position of appellants is as follows: Thomas Higgins died in March, 1920. If any inheritance tax whatever was due the state of Arizona, it was by virtue of the law in force and effect at that time, being the 1913 Code. In 1922 the legislature passed a new inheritance tax law, which expressly repealed the 1913 act under which, if at all, a tax was due from the estate of Thomas Higgins, and in subdivision 4, section 1, of such act of 1922, provided that any property or estate which had already vested by reason of a death in certain beneficiaries ''shall not be subject to a tax.'' It is urged, first, that by the language of subdivision 4, section 1, of the act of 1922, any tax which was due from the estate of Thomas Higgins under the old law was directly remitted, and, second, that since the old statute was expressly repealed by the new act, all taxes due and payable under the former, but

which had not yet been collected, were *ipso facto* canceled.

We therefore consider the effect, first of the proviso of subdivision 4, section 1, *supra*. The 1922 Inheritance Tax Act was obviously taken, at least so far as the parts pertinent to this case are concerned, from Wisconsin. In 1899 (Laws 1899, c. 355), the legislature of Wisconsin adopted an inheritance tax law. Subdivision 4, section 1, of that act, was almost *verbatim* the same as our subdivision 4, section 1, down to its first semicolon. In 1903 Wisconsin amended the subdivision by adding thereto the exact language of the proviso in question, except that instead of the words "a tax," the words "the tax" were used. Laws 1903, chapter 44. In 1913 subdivision 4 was further amended (Laws Wis. 1913, chapter 627) by adding the second proviso now contained in our act in regard to contingent interests, and by changing the words "the tax" to "a tax."

It is not seriously contended by appellants that the legislature of 1922 intended as a matter of fact to remit the taxes already accrued under the law of 1913. Not only would it be absurd to suppose any sane legislature intended to give away public money with no legal or moral consideration whatever, which is what in effect the remission of this particular tax would amount to, but the very legislature which passed the 1922 law, some thirteen days after it was adopted, and long before it took effect, passed chapter 26A, *supra*. Whether that chapter is constitutional or not we need not consider, so far as this particular point is concerned. As an expression of intent it is unmistakable. Appellants, however, insist that, notwithstanding any remission of an accrued tax was furthest from the actual desire or understanding of the legislature at the time chapter 26 was adopted, nevertheless the language used is so

explicit and so unmistakable that we must as a matter of law assume what we know as a matter of fact was not true.

It is obvious from an examination of the various Wisconsin statutes that the tax referred to in the proviso in question from which vested estates should be exempt was originally meant and understood to be a tax imposed by the particular statute containing the proviso itself; in other words, that no tax should be *ex post facto*. The first act of Wisconsin containing the proviso uses the words "the tax," which even by the strictest rules of grammatical construction refer to the particular tax set up in the act itself. How the word "the" later became changed to "a" we have no means of ascertaining. We have not, however, been cited to any case from the state of Wisconsin to the effect that such presumably inadvertent change has ever been held to work a release or remission of a vested inheritance tax, and we think common sense, common justice and the adherence to the doctrine of plain intention require that the word "a" in the proviso in question should be interpreted as meaning "the" or "such" rather than "any," as contended by appellants.

The old doctrine of *"lex ita scripta est"* has often been invoked ever since, and probably before, the leading case of *Shylock* v. *Antonio,* and the famous plea of "it is not so nominated in the bond" has been repeatedly urged. Many, indeed, of our courts have listened to that specious appeal, and have followed the rule, and others in their efforts to avoid monstrous injustice have been driven, even as was the judge·in that case, to technicalities of interpretation as fine spun as those used by Portia. We think, however, in this modern day and generation we have grown beyond such pleas and such expedients for avoiding them. We have often held in the past, and

we again repeat, that in the interpretation of any statute the intent of the legislature is the real test of the meaning of the law, and that strict rules of technical grammar will not be resorted to defeat its plain purpose. *Hicks* v. *Krigbaum,* 13 Ariz. 237, 108 Pac. 482; *Deyo* v. *Arizona G. & C. Co.,* 18 Ariz. 149, L. R. A. 1916E 1257, 157 Pac. 371; *Coggins* v. *Ely,* 23 Ariz. 155, 202 Pac. 391; *Leibes* v. *Steffy,* 4 Ariz. 11, 32 Pac. 261; *Western Invest. Bank. Co.* v. *Murray,* 6 Ariz. 215, 56 Pac. 728; *Federal Mut. L. Ins. Co.* v. *Industrial Commission, etc., ante,* p. 224, 252 Pac. 512. We hold, therefore, subdivision 4, section 1, of chapter 26, *supra,* does not destroy any right of the state to an inheritance tax which had accrued prior to the taking effect of the act of 1922.

Section 29 of the act, however, expressly repeals the inheritance tax law of 1913, with all amendments, and it is contended by appellants that this is *ipso facto* a cancellation of the tax. It is ordinarily true as a matter of common law that the repeal of a statute under which taxes are levied puts an end to the right to collect them, unless the repealing statute contains a provision preserving the taxes and the right of collection. *Gorley* v. *Sewell,* 77 Ind. 316; *Bryan's Admr.* v. *Harvey's Admr.,* 11 Tex. 311; *Gull R. L. Co.* v. *Brock,* 7 N. D. 135, 73 N. W. 430. It is urged by appellee, however, that, notwithstanding this general rule, it is expressly abrogated by paragraphs 5554 and 5560, Revised Statutes of Arizona of 1913, Civil Code, which read as follows:

"5554. The repeal or abrogation of any statute, law or rule does not revive any former statute, law or rule theretofore repealed or abrogated, *nor does it affect any right, then already existing or accrued at the time of such repeal,* or any action or proceeding theretofore taken, except such as may be provided in such subsequent repealing statute, nor shall it affect any private statute not expressly repealed thereby."

"5560. No action or proceeding commenced before any repealing act takes effect *and no right accrued* is affected by the provisions of such act, but proceedings therein must conform to the requirements of the acts passed at the same session of the Legislature so far as such last mentioned acts are applicable."

That, if the Higgins Estate was ever subject to an inheritance tax, it had accrued at the time of his death, cannot be disputed. Paragraph 4997, Rev. Stats. Ariz. 1913, Civil Code; paragraph 5000, Rev. Stats. Ariz. 1913, Civil Code. In such case the tax was unquestionably preserved by the provisions of paragraphs 5554 and 5560, *supra.* It is urged, however, by appellants, that these paragraphs are unconstitutional, in that they are an attempt by one legislature to limit or bind the acts of a future one. That this cannot be done is, of course, undoubted. The authority of the legislature is limited only by the Constitution itself, and it is axiomatic that any such body may alter, limit or repeal, in whole or in part, any statute passed by a preceding one, unless there is some constitutional inhibition to the contrary. If paragraphs 5554 and 5560, *supra,* are to be given the construction placed upon them by appellants as an attempt to deny the fifth legislature the right to repeal an act passed by the first legislature, they are of course unconstitutional, illegal and void. We do not, however, believe for a moment there was any intent on the part of the first legislature to assume the right to limit the action of a subsequent one. It was, in our opinion, only an effort to establish a definite rule of statutory construction to the effect that the mere repeal of a statute without any further action by the legislature does not terminate any accrued right conferred by the statute, and to provide a general method of enforcing such rights. We do not think there is any doubt that under our Constitution the legislature

had the right to so provide. It is true that a subsequent legislature could repeal those paragraphs. But until they are repealed they remain of full force and effect. There was no attempt in chapter 26, *supra,* to repeal paragraphs 5554 and 5560, and till repealed the rule that the repeal of a statute lapses any accrued rights existing by virtue thereof does not exist in the state of Arizona.

We therefore hold that any right accrued to the state of Arizona of an inheritance tax upon the estate of Thomas Higgins under the law of 1913 was unaffected by the repeal of that law contained in section 29 of chapter 26, *supra,* but that, if it ever existed, it still exists as a lien upon the property of the estate, notwithstanding that chapter.

The same general principle applies to appellant's contention that there is no machinery for the collection of the tax. Paragraph 5560, *supra,* expressly provides that any accrued rights given by a repealed act are enforced in conformity with the acts passed the same session of the legislature when the repealing act was passed, in so far as possible. Chapter 26, *supra,* provides a full and complete method of collecting inheritance taxes, and, indeed, it is the general rule that the form of procedure to be made use of in collecting any tax is that in force when the proceedings are instituted, and not when the tax vests. *In re Davis,* 149 N. Y. 539, 44 N. E. 185; *In re Sloan,* 154 N. Y. 109, 47 N. E. 978; Blakemore & Bancroft, Inheritance Taxes, p. 20.

The final question is as to whether the state treasurer is a proper person to receive special letters of administration in the estate. The act of 1922 expressly provides that, when no application for administration has been made within sixty days after the demise of a person owning an estate presumably subject to the inheritance tax law, a special adminis-

trator shall be appointed for the purpose of determining whether a tax is due, and, if so, enforcing the adjustment and payment thereof, and that when, as contended by the state in this case, the estate was transferred in contemplation of the death of the grantor without the payment of an inheritance tax, the special administrator shall be entitled to such administration as is necessary for the purpose of the adjustment and payment of the tax. Under our law it is the duty of the state treasurer to see to the collection of the inheritance tax. Since one of the necessary steps to collect it, in case the heirs or the parties interested in the estate do not proceed with its administration, is the appointment of a special administrator, we think it is not only the right, but the duty, of the state treasurer in such cases to see that an administrator is appointed.

The statute itself does not disqualify him, but it is urged that, since the treasurer is an interested party on behalf of the state, it is not just he should administer an estate, as his interest as treasurer may be adverse to that of the estate. Such an argument may be, and doubtless was, considered by the superior court on the application for letters. We think, however, that the interest of the state treasurer is not of such a nature as would necessarily disqualify him from performing his plain duty of collecting the tax when the parties adversely interested in the estate have taken no steps to see that the law is complied with. His acts are subject to the supervision of the lower court as well as of this, and presumably that supervision will be wisely and justly exercised. In this case it appears from the record that no attempt was made by any person to administer the estate of Thomas Higgins for nearly four years after his death. Under such circumstances we cannot say

that the appointment of the state treasurer was an abuse of discretion.

No error appearing in the record, the order of the superior court of Cochise county is affirmed.

McALISTER, C. J., and ROSS J., concur.