IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

CAVE CREEK UNIFIED SCHOOL DISTRICT; CASA GRANDE
ELEMENTARY SCHOOL DISTRICT; CRANE ELEMENTARY SCHOOL
DISTRICT; PALOMINAS ELEMENTARY SCHOOL DISTRICT;
YUMA UNION HIGH SCHOOL DISTRICT; ARIZONA EDUCATION
ASSOCIATION; ARIZONA SCHOOL BOARDS ASSOCIATION;
SCOTT HOLCOMB; FRANK HUNTER; AND NANCY PUTMAN,
*Plaintiffs/Appellants,*

*v.*

DOUG DUCEY, IN HIS CAPACITY AS STATE TREASURER;
AND STATE OF ARIZONA,
*Defendants/Appellees.*

No. CV-13-0039-PR
Filed September 26, 2013

Appeal from the Superior Court in Maricopa County
The Honorable J. Kenneth Mangum, Judge (Ret.)
No. CV2010-017113
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
231 Ariz. 342, 295 P.3d 440 (2013)
**AFFIRMED**

COUNSEL:

Timothy M. Hogan, Arizona Center for Law in the Public Interest,
Phoenix and Donald M. Peters (argued), LaSota & Peters, Phoenix, for
Cave Creek Unified School District, Casa Grande Elementary School
District, Crane Elementary School District, Palominas Elementary School
District, Yuma Union High School District, Arizona Education
Association, Arizona School Boards Association, Scott Holcomb, Frank
Hunter, and Nancy Putman

Thomas C. Horne, Arizona Attorney General, Kathleen P. Sweeney
(argued), Assistant Attorney General, Kevin D. Ray, Assistant Attorney

General, Jinju Park, Assistant Attorney General, Phoenix, for Doug Ducey and the State of Arizona

Peter A. Gentala, Pele K. Peacock, Arizona House of Representatives, Phoenix; and Gregrey G. Jernigan, Arizona State Senate, Phoenix, for Amicus Curiae Andrew Tobin and Andy Biggs

Michael T. Liburdi and Michelle M. Carr, Snell & Wilmer, LLP, Phoenix, for Amicus Curiae Arizona Free Enterprise Club

─────────────────

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE BRUTINEL, and JUSTICE TIMMER joined.

─────────────────

JUSTICE PELANDER, opinion of the Court:

¶1        Arizona voters approved a referendum in 2000 that statutorily directed the Arizona Legislature to annually "increase the base level . . . of the revenue control limit" for K-12 public school funding. A.R.S. § 15-901.01.  The issue here is whether the voters could constitutionally impose this mandate.  Finding no constitutional impediment to the electorate's directive, we further hold that legislative adjustments to § 15-901.01's funding scheme are limited by the Voter Protection Act ("VPA"), Ariz. Const. art. 4, pt. 1, § 1(6)(B)–(C), (14).

## I.  BACKGROUND

¶2        Public elementary and secondary school funding is set by a statutory formula.  *See* A.R.S. §§ 15-941 to -954.  One aspect of that formula is the "base level," a statutorily fixed "dollar amount that is multiplied by a weighted student count and other factors to determine the base support level for each school district."  *Cave Creek Unified Sch. Dist. v. Ducey*, 231 Ariz. 342, 345 ¶ 2 n.1, 295 P.3d 440, 443 n.1 (App. 2013); *see also* A.R.S. § 15-901(B)(2) (defining "base level").  During the pertinent time, the base support level and the transportation support level were the only two components of the "revenue control limit," a budget expenditure limit used to calculate the amount of certain state funds provided to school districts.  A.R.S. §§ 15-901(A)(12), -947, -971.

¶3          In 2000, the legislature approved SB 1007, which proposed a sales tax to increase funding for public schools, community colleges, and universities, as well as other changes to the "financial accountability" requirements of K-12 schools.  2000 Ariz. Sess. Laws, ch. 1 (5th Spec. Sess.).  The legislature referred portions of SB 1007 as Proposition 301 for voter approval in the 2000 general election.  Approved by the voters, that measure included a requirement that the legislature make annual inflation adjustments to the budget for K-12 public schools:

> If approved by the qualified electors voting at a statewide general election, for fiscal years 2001-2002 through 2005-2006, the legislature shall increase the base level or other components of the revenue control limit by two per cent.  For fiscal year 2006-2007 and each fiscal year thereafter, the legislature shall increase the base level or other components of the revenue control limit by a minimum growth rate of either two per cent or the change in the GDP price deflator, as defined in [A.R.S. §] 41-563, from the second preceding calendar year to the calendar year immediately preceding the budget year, whichever is less, except that the base level shall never be reduced below the base level established for fiscal year 2001-2002.

*Id.* § 11.  That provision is codified as A.R.S. § 15-901.01.

¶4          From 2001 to 2010, the legislature adjusted the base level and transportation support level annually for inflation.  The 2010-11 budget (HB 2008), however, included an adjustment only to the transportation support level.  2010 Ariz. Sess. Laws, ch. 8, § 2 (7th Spec. Sess.).  The 2011-12 and 2012-13 budgets likewise did not include base level adjustments.

¶5          Several school districts and other parties (collectively, "Cave Creek") sued the State Treasurer and the State of Arizona (collectively, "the State"), alleging that HB 2008 amended or repealed a voter-approved law, violating the VPA.  Cave Creek sought a declaratory judgment that Proposition 301 (now § 15-901.01) requires the legislature to annually adjust all components of the revenue control limit for inflation.  Ruling that Proposition 301 was "not self executing," that § 15-901.01 was "precatory, not mandatory," and that "the voters cannot require the legislature to enact a law that provides for [the] appropriation" prescribed

in the statute, the superior court dismissed Cave Creek's amended complaint for failing to state a claim.

¶6        The court of appeals reversed and remanded the case for entry of a declaratory judgment in favor of Cave Creek.[1] *Cave Creek*, 231 Ariz. at 353 ¶ 37, 295 P.3d at 451.  The court held that § 15-901.01 "requires the legislature to provide for annual inflationary increases in each component of the revenue control limit, including the base level."  *Id.* at 345 ¶ 1, 295 P.3d at 443.  Because the statute was enacted through a voter referendum, the court further concluded, it "is subject to the provisions of the VPA," *id.* at 348 ¶ 10, 295 P.3d at 446, and "[a]bsent an amendment or repeal of § 15-901.01 by the voters, the legislature is bound by the VPA to give full effect to the statute's requirements," *id.* at 353 ¶ 32, 295 P.3d at 451.  The court, however, did not expressly determine whether "[HB] 2008 violates the VPA," instead remarking that the legislature "would risk violating the VPA" if it failed to adjust the base level for inflation in future fiscal years.  *Id.* at 352 ¶ 31, 295 P.3d at 450.

¶7        We granted the State's petition for review to determine whether the voters could constitutionally direct the legislature to annually increase the base level education funding component, and, if so, whether the legislature could disregard that statutory directive without violating the VPA.  Both are legal questions of statewide importance.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.[2]

---

[1]        The superior court also denied Cave Creek's request for injunctive and mandamus relief.  The court of appeals did not address those rulings because they were not raised on appeal.  *Cave Creek*, 231 Ariz. at 346 ¶ 5 n.4, 295 P.3d at 444 n.4.  Those issues likewise are not before us.

[2]        Amicus curiae Arizona Free Enterprise Club urges us to dismiss the case as moot because the legislature "has since funded both components of A.R.S. § 15-901.01" in fiscal year 2013-14.  We decline to do so.  Even if the legislature fully funded both components in the current fiscal year, a point not conceded by Cave Creek, that does not moot Cave Creek's claims regarding prior or future years' funding levels.  In addition, the parties themselves have not raised a mootness issue, and "amicus curiae are not permitted to create, extend, or enlarge the issues [before us]."  *City of Tempe v. Prudential Ins. Co.*, 109 Ariz. 429, 432, 510 P.2d 745, 748 (1973).

## II.  DISCUSSION

**¶8**　　　The legislature and electorate "share lawmaking power under Arizona's system of government." *Ariz. Early Childhood Dev. & Health Bd. v. Brewer*, 221 Ariz. 467, 469 ¶ 7, 212 P.3d 805, 807 (2009). Through the initiative and referendum processes, "the people reserve[d] the power to propose laws and amendments to the constitution and to enact or reject such laws and amendments at the polls, independently of the legislature." Ariz. Const. art. 4, pt. 1, § 1(1); *see also id.* § 1(2)–(3) (defining the initiative and referendum powers).

**¶9**　　　"The Voter Protection Act, added to the Arizona Constitution by voters in 1998, limits the legislature's authority" to modify voter initiatives and referenda. *Ariz. Early Childhood*, 221 Ariz. at 469 ¶ 6, 212 P.3d at 807. Before the VPA's adoption, the legislature could repeal or modify a voter-approved law passed by less than a majority of all registered voters. *Id.* ¶ 7; *see Adams v. Bolin*, 74 Ariz. 269, 284–85, 247 P.2d 617, 627–28 (1952) (interpreting former Article 4, Section 1(6) of the Arizona Constitution).　The VPA, however, imposes heightened constitutional restrictions.　Now the legislature cannot repeal "an initiative [or referendum] measure approved by a majority of the votes cast thereon." Ariz. Const. art. 4, pt. 1, § 1(6)(B).　Nor may it amend or supersede a voter-approved law unless the proposed legislation "furthers the purposes" of the initiative or referendum measure and is approved by a three-fourths vote in the House of Representatives and Senate.　Ariz. Const. art. 4, pt. 1, § 1(6)(C), (14).

### A.

**¶10**　　　The legislature drafted and referred Proposition 301 to the voters for approval in 2000.　Nonetheless, the State argues that the resulting directive in § 15-901.01 for annual education funding adjustments is unconstitutional or otherwise unenforceable.

**¶11**　　　A party challenging a statute generally has the burden of establishing that it is unconstitutional. *State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988).　When the statute in question involves no fundamental constitutional rights or distinctions based on suspect classifications, we presume the statute is constitutional and will uphold it

unless it clearly is not. *See id*. We likewise presume that, in drafting and referring Proposition 301 for voter approval, the legislature acted "with full knowledge of relevant constitutional provisions," including the VPA. *Roylston v. Pima County*, 106 Ariz. 249, 250, 475 P.2d 233, 234 (1970).

¶12 The State argues that, "*absent a constitutional provision that authorizes them to do so,* the voters cannot restrict the Legislature's otherwise plenary discretion by ordering it *by statute* to exercise its discretion in a particular manner." Relying on pre-VPA Arizona case law, the State contends that only a constitutional provision can limit the legislature's plenary authority, *see Home Accident Ins. Co. v. Indus. Comm'n*, 34 Ariz. 201, 208, 269 P. 501, 503 (1928), and therefore the voters could not, by statute, limit prospective legislative discretion. And, the State further asserts, neither the VPA nor any other constitutional provision "authorizes the voters to give the Legislature statutory commands."

¶13 We reject the State's argument because its premise is flawed, it is based solely on pre-VPA case law, and it fails to give meaning to the VPA. Our state constitution, unlike the federal constitution, does not grant power, but instead limits the exercise and scope of legislative authority. *Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 437–38 (1947) (noting that "the whole power not prohibited by the state and Federal constitutions is retained in the people and their elected representatives"); *see also* Ariz. Const. art. 2, § 33 ("The enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people."). As the State acknowledges, "the Legislature has all the legislative power that our Constitution does not prohibit and that the states did not surrender to the federal government." *See Home Accident Ins. Co.*, 34 Ariz. at 208, 269 P. at 503. Accordingly, our case law has consistently acknowledged that "we do not look to the constitution to determine whether the legislature is authorized to [act]." *Citizens Clean Elections Comm'n v. Myers*, 196 Ariz. 516, 520 ¶ 12, 1 P.3d 706, 710 (2000).

¶14 These same principles apply to the people's lawmaking power. Thus, contrary to the State's assertion, the validity of § 15-901.01 does not hinge on whether the VPA or any other constitutional provision "empowers the voters to restrict the Legislature's plenary legislative discretion by ordering it by statute to make a specific appropriation or enactment." Rather, the relevant question is whether the Arizona Constitution precludes the voters from enacting the statutory directive.

¶15      The State does not cite any state or federal constitutional provision that restricts the voters' authority as the State posits. "[T]he silence of the constitution" cannot "be construed as an implied prohibition" on lawmaking authority of either the legislature or the people. *Cox v. Superior Court*, 73 Ariz. 93, 97, 237 P.2d 820, 822 (1951). Significantly, the State agrees that the legislature could have constitutionally enacted § 15-901.01 through its own lawmaking powers.[3] It follows that the people also could constitutionally enact that statute. *See Tilson v. Mofford*, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987) ("The legislative power of the people is as great as that of the legislature."); *cf.* Ariz. Const. art. 22, § 14 ("Any law which may be enacted by the Legislature under this Constitution may be enacted by the people under the Initiative.").

¶16      Still, the State correctly asserts that one legislature generally cannot restrict the lawmaking powers of a future legislature. *See Higgins' Estate v. Hubbs*, 31 Ariz. 252, 264, 252 P. 515, 519 (1926) (recognizing that "an attempt by one [l]egislature to limit or bind the acts of a future one" is unconstitutional); *accord Wash. State Farm Bureau Fed'n v. Gregoire*, 174 P.3d 1142, 1150 (Wash. 2007) ("Implicit in the plenary power of [a] legislature is the principle that one legislature cannot enact a statute that prevents a future legislature from exercising its law-making power."). In other words, one legislature may not enact a statute that irrevocably binds successor legislatures. *See Higgins' Estate*, 31 Ariz. at 264, 252 P. at 519. The legislature may freely repeal or modify previously enacted laws, "unless there is some [contrary] constitutional inhibition." *Id.*

---

[3]      The State also acknowledges that had the voters approved a measure like § 15-901.01 that automatically adjusted the education funding components without requiring any implementing legislative action, such self-executing adjustments would be valid and the legislature would have to include them in the annual budget. Like the court of appeals, however, we do not address the parties' arguments on whether § 15-901.01 is itself an appropriation or otherwise protected by the VPA as a measure that "created or allocated [funds] to a specific purpose" within the meaning of Article 4, Part 1, Section 1(6)(D) of the Arizona Constitution. *See Cave Creek*, 231 Ariz. at 348 ¶ 11 n.6, 295 P.3d at 446 n.6. The State's petition for review did not raise, nor did we grant review on, that issue.

¶17　　Thus, had the legislature itself enacted § 15-901.01 in 2000 rather than referring the proposition to the voters, subsequent legislatures could repeal, amend, or otherwise adjust that statute's funding scheme. Extrapolating from that principle, the State argues that the electorate, through a voter-approved statute, likewise cannot bind future legislatures. But having chosen to refer the measure to the people, who then passed it, the legislature is subject to the restrictions of the VPA, which fundamentally "altered the balance of power between the electorate and the legislature." *Ariz. Early Childhood*, 221 Ariz. at 469 ¶ 7, 212 P.3d at 807.

¶18　　We find unpersuasive the State's argument that, despite the VPA, only a constitutional provision, rather than a statutory directive such as § 15-901.01, may limit the legislature's plenary legislative power. The VPA expressly limits the legislature's powers relating to a "referendum measure" approved by a majority of votes cast thereon. Ariz. Const. art. 4, pt. 1, § 1(6)(B)–(C), (14). Thus, the VPA's requirements and restrictions do not differentiate between voter-approved statutes and constitutional provisions. And, contrary to the State's assertion, the Arizona voters in 2000 did "enact[] in the exercise of *their* legislative discretion" a VPA-protected measure, albeit codified in a statute.

¶19　　In light of the VPA, we also are not persuaded that the voters' directive in § 15-901.01 impermissibly limited the legislature's plenary powers. Without question, the hallmark of lawmaking is "discretionary, policymaking decision[s] . . . hav[ing] prospective implications." *Bogan v. Scott-Harris*, 523 U.S. 44, 55–56 (1998); *see also Giss v. Jordan*, 82 Ariz. 152, 159, 309 P.2d 779, 784 (1957) ("The questions of the wisdom, justice, policy or expediency of a statute are for the legislature alone."). And unless constitutionally restrained, the legislature's plenary authority includes the discretion "to consider any subject within the scope of government," *State ex rel. Napolitano v. Brown*, 194 Ariz. 340, 342 ¶ 5, 982 P.2d 815, 817 (1999), including decisions on how state funds are prioritized and spent, *see Crane v. Frohmiller*, 45 Ariz. 490, 496–97, 45 P.2d 955, 958–59 (1935); *cf.* Ariz. Const. art. 4, pt. 2, § 20 (appropriation bills); *id.* art. 9, § 5 ("No money shall be paid out of the State treasury, except in the manner provided by law."). But when, as here, the legislature deviates from a voter-approved law, the VPA's constitutional limitations apply and qualify the legislature's otherwise plenary authority. *Ariz. Early Childhood*, 221 Ariz. at 469 ¶ 7, 212 P.3d at 807.

¶20       With respect to voter-approved laws such as § 15-901.01, the VPA restricts the legislature's power to repeal, amend, or supersede the measure. *Id.*; *see* Ariz. Const. art. 4, pt. 1, § 1(6)(B)–(C), (14). We therefore next address whether the legislature's failure to adjust all components of the revenue control limit for inflation each year violates the VPA.

**B.**

¶21       We interpret a constitutional amendment such as the VPA to effect "the intent of the electorate that adopted it." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). "We do so by fairly interpreting the language used and, unless the context suggests otherwise, giving words 'their natural, obvious and ordinary meaning.'" *Rumery v. Baier*, 231 Ariz. 275, 278 ¶ 15, 294 P.3d 113, 116 (2013) (quoting *State ex rel. Morrison v. Nabours*, 79 Ariz. 240, 245, 286 P.2d 752, 755 (1955)).

¶22       The State does not dispute that Proposition 301 was a "referendum measure" within the meaning of Article 4, Part 1, Section 1(3) of the Arizona Constitution. *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991) (describing the two types of referendum measures recognized in the Arizona Constitution, one of which "permits the legislature to refer a legislative enactment to a popular vote"). Nor does the State argue that HB 2008 was authorized under the VPA because it furthered Proposition 301's purposes and received a three-fourths vote in both houses. The issue then is whether the legislature's deviation from § 15-901.01's funding mandate, by increasing only the transportation support level in HB 2008, impermissibly repeals, amends, or supersedes the statute in violation of the VPA.

¶23       Section 15-901.01 directed the legislature to "increase the base level . . . of the revenue control limit" annually for inflation.[4]

---

[4]       The court of appeals held that the disjunctive phrase "base level or other components of the revenue control limit" in § 15-901.01 does not authorize the legislature to fund only one component of the revenue control limit without also annually increasing the base level. *See Cave Creek*, 231 Ariz. at 352 ¶ 29, 295 P.3d at 450; *accord* Op. Ariz. Att'y Gen. I01-020, at *9. We do not address that issue, however, as the State did not seek review of it.

Although HB 2008 did not expressly state that it repealed, amended, or otherwise changed that directive, *cf. State Land Dep't v. Tucson Rock & Sand Co.*, 107 Ariz. 74, 77, 481 P.2d 867, 870 (1971) (a statute expressly repeals another when it "nam[es] . . . those [provisions] to be superseded"), we must consider its effect on the fundamental purposes underlying the VPA. *See Caldwell v. Bd. of Regents*, 54 Ariz. 404, 410, 96 P.2d 401, 403 (1939) ("[T]he legislature may not do indirectly what it is prohibited from doing directly."). The intent of the VPA, construed from its text and structure, was to limit changes to voter-approved laws, including referendum measures. *See Ariz. Early Childhood*, 221 Ariz. at 469 ¶ 7, 212 P.3d at 807.

¶24 The VPA itself does not define the words "repeal," "amend," or "supersede" in Article 4, Part 1, Section 1 of the Arizona Constitution. But we have recognized that a statute can be implicitly repealed or amended by another through "repugnancy" or "inconsistency." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333 ¶ 29, 26 P.3d 510, 516 (2001) (implied repeal); *Ariz. State Tax Comm'n v. Reiser*, 109 Ariz. 473, 479, 512 P.2d 16, 22 (1973) (implied amendment); *accord* 1A Sutherland Statutory Construction § 22:13 (7th ed. 2012) ("An implied amendment is an act which purports to be independent, but which in substance alters, modifies, or adds to a prior act."). Although the finding of an implied repeal or amendment is generally disfavored, it is required when conflicting statutes cannot be harmonized to give each effect and meaning. *See UNUM Life*, 200 Ariz. at 333 ¶¶ 28–29, 26 P.3d at 516; *Reiser*, 109 Ariz. at 479, 512 P.2d at 22. These legal standards are no less applicable when a budget enactment such as HB 2008 inharmoniously modifies a related, voter-approved law.

¶25 The State conceded during oral argument before this Court that HB 2008 violated the VPA by effectively repealing, amending, or superseding § 15-901.01, assuming that statute is constitutional. *See* Ariz. Const. art. 4, pt. 1, § 1(6)(B)–(C), (14). Having concluded that the voters could constitutionally direct the legislature to make education funding adjustments, we agree with that concession. As a matter of law and common sense, HB 2008 and the base level provision in § 15-901.01 cannot be harmonized. *See UNUM Life*, 200 Ariz. at 333 ¶¶ 28–29, 26 P.3d at 516 (finding an implied repeal when two related statutes governing life insurance policy proceeds could not be harmonized to "giv[e] [each] force and meaning"). Because HB 2008 did not include the full inflation

adjustment that § 15-901.01 required, it violated the VPA's express limitations on legislative changes to voter-approved laws.[5]

## C.

¶26 Cave Creek requests an award of attorneys' fees under the private attorney general doctrine, which permits a court "to award [attorneys'] fees to a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). After considering those factors, the court of appeals concluded that an award of reasonable attorneys' fees to Cave Creek was appropriate because the litigation's outcome "affects funding for Arizona's public education, [which] necessarily benefits a large number of people"; "absent private enforcement, the legislature may have continued to operate under its erroneous interpretation of § 15-901.01"; and "public education [funding] . . . has continual importance in this state." *Cave Creek*, 231 Ariz. at 353 ¶¶ 35–36, 295 P.3d at 451. The State has not challenged the court of appeals' analysis or fee award. We therefore likewise grant Cave Creek's request for reasonable attorneys' fees incurred in the proceedings before this Court.

## III. CONCLUSION

¶27 We affirm the court of appeals' opinion and remand the case to the superior court for entry of a declaratory judgment in favor of Cave Creek and further proceedings consistent with this opinion.

---

[5] Our analysis and conclusion are consistent with a 2001 Attorney General advisory opinion that addressed the issue before us. Op. Ariz. Att'y Gen. I01-020, at *3 (concluding that Proposition 301 is a referendum measure protected from legislative changes by the VPA).