IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERIC MEYER, LELA ALSTON, RICHARD C. ANDRADE, REGINALD
BOLDING JR., MARK A. CARDENAS, KEN CLARK, DIEGO ESPINOZA,
CHARLENE R. FERNANDEZ, RANDALL FRIES, ROSANNA
GABALDON, SALLY ANN GONZALES, ALBERT HALE, MATTHEW A.
KOPEC, JOHNATHAN R. LARKIN, STEFANIE MACH, JUAN JOSE
MENDEZ, LISA A. OTONDO, CELESTE PLUMLEE, REBECCA RIOS,
MACARIO SALDATE, CECI VELASQEZ, AND BRUCE WHEELER,
members of the Arizona State House of Representatives; KATIE HOBBS,
DAVID BRADLEY, OLIVIA CAJERO BEDFORD, LUPE CONTRERAS,
ANDREA DALESSANDRO, STEVE FARLEY, BARBARA MCGUIRE,
ROBERT MEZA, CATHERINE MIRANDA, and MARTIN QUEZADA,
members of the Arizona State Senate, *Plaintiffs/Appellees,*

*v.*

STATE OF ARIZONA, a body politic, *Defendant/Appellant.*

No. 1 CA-CV 18-0031
FILED 2-5-2019

Appeal from the Superior Court in Maricopa County
No. CV 2016-092409
The Honorable Joshua D. Rogers, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rusty D. Crandell
*Counsel for Defendant/Appellant*

Torres Law Group, Tempe
By Israel G. Torres; James E. Barton, II; Sama John Golestan
*Counsel for Plaintiffs/Appellees*

---

**OPINION**

Presiding Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1            The State appeals the superior court's grant of summary judgment in favor of Appellees, members of the Arizona House of Representatives and Senate who voted against passage of House Bill ("H.B.") 2579 (collectively, the "Legislators"), finding Arizona Revised Statutes ("A.R.S.") section 23-204, as amended by H.B. 2579, unconstitutional because it violates the Voter Protection Act ("VPA"). For the following reasons, we affirm.

**BACKGROUND**

¶2            In 2006, Arizona voters passed Proposition 202, an initiative measure commonly referred to as the "Raise the Minimum Wage for Working Arizonans Act" ("Minimum Wage Act" or "Act"). The Minimum Wage Act is codified at A.R.S. §§ 23-362, -363, and -364. The central provision at issue in this appeal falls under the enforcement provision, A.R.S. § 23-364, which empowers a county, city, or town to "regulate minimum wages *and benefits* within its geographic boundaries" as long as it does "not provide for a minimum wage lower than that prescribed in this article." A.R.S. § 23-364(I) (emphasis added). It goes on to state, "[t]his article . . . shall not limit the authority of the legislature or any other body to adopt any law or policy that requires payment of higher or supplemental wages *or benefits*, or that extends such protections to employers or employees not covered by this article." *Id.* (emphasis added).

¶3            In May 2016, the legislature adopted H.B. 2579, which amended A.R.S. § 23-204 and preempted the field of nonwage benefits, removing from cities and towns the power to regulate nonwage benefits. H.B. 2579 passed with majority votes in both the House and Senate, but neither chamber received a three-fourths' majority vote. The relevant language of the bill provides:

The regulation of employee benefits, including nonwage compensation, paid and unpaid leave and other absences, meal breaks and rest periods, is of statewide concern. The regulation of nonwage employee benefits pursuant to this chapter and federal law is not subject to further regulation by a city, town or other political subdivision of this state.

A.R.S. § 23-204(A).

¶4 In June 2016, the plaintiffs sued the State in the superior court seeking declaratory relief, asking H.B. 2579 be found unconstitutional because it violated the VPA and the home-rule provision of the Arizona Constitution. The plaintiffs were comprised of three groups: (1) a labor union, United Food and Commercial Workers, Local 99 ("UFCW"); (2) five individual city councilmembers from three Arizona cities ("Councilmembers"); and (3) the Legislators who voted against H.B. 2579. The State moved to dismiss the home-rule claims by all three groups of plaintiffs and moved to dismiss the VPA claims by UFCW and the Councilmembers only. The superior court granted the State's motion to dismiss in full, leaving only the Legislators' VPA claim.

¶5 The State and Legislators filed cross-motions for summary judgment on the VPA claim. After briefing and oral argument, the court granted the Legislators' motion for summary judgment, ruling that H.B. 2579 impliedly repealed a portion of the Minimum Wage Act and therefore violated the VPA. The court also awarded the Legislators all attorney fees requested, including fees for opposing the motion to dismiss. This timely appeal from the State followed.

## DISCUSSION

¶6 We review grants of summary judgment and questions of statutory interpretation de novo. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015). "Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate." *State v. Gomez*, 212 Ariz. 55, 57, ¶ 11 (2006). If the statute's language is unambiguous and is subject to only one reasonable meaning, we apply that meaning without resorting to other statutory interpretation methods. *Id.*; *see also J.D. v. Hegyi*, 236 Ariz. 39, 40-41, ¶ 6 (2014). Only if the language is ambiguous do we discern the electorate's intent by resorting to secondary interpretation methods, such as consideration of the statute's subject matter, historical background, effects and consequences, and spirit

and purpose. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018) (citation omitted).

## I.  Applicability of the VPA

**¶7**          The electorate shares lawmaking power with the legislature under Arizona's system of government. *See Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 4, ¶ 8 (2013) (citation omitted). "[T]he people reserve[d] the power to propose laws and amendments to the constitution and to enact or reject such laws and amendments at the polls, independently of the legislature" through the initiative and referendum processes. Ariz. Const. art. 4, pt. 1, § 1(1).

**¶8**          In 1998, Arizona voters adopted the VPA as a constitutional amendment, limiting the legislature's power to amend, repeal, or supersede voter-approved laws. *See* Ariz. Const. art. 4, pt. 1, § 1(6)(B)-(C), (14). When the legislature addresses the subject of a voter-approved initiative, the constitutional limitations of the VPA apply and limit the legislature's otherwise plenary authority. *See id.* The VPA prohibits legislative repeal of initiative measures approved by the voters and permits a legislative amendment to an initiative only when the amendment "furthers the purposes" of the initiative and is passed by "at least three-fourths of the members of each house of the legislature." *Id.*

**¶9**          The VPA's constitutional limitations apply to the Minimum Wage Act because it was passed by voter initiative. Consequently, the legislature cannot repeal or supersede the Minimum Wage Act, and any amendment would have to further its purpose and be passed by three-fourths' vote in both chambers of the legislature. The parties do not dispute that H.B. 2579 was passed without the requisite three-fourths' vote. The dispositive question, therefore, is whether the legislature impermissibly amended or superseded a portion of the Minimum Wage Act in violation of the VPA when enacting H.B. 2579.

## II.  Constitutionality of H.B. 2579

**¶10**          H.B. 2579 did not explicitly repeal or supersede the Minimum Wage Act, *cf. State Land Dep't v. Tucson Rock & Sand Co.*, 107 Ariz. 74, 77 (1971) (a statute expressly repeals another when it "nam[es] . . . those [provisions] to be superseded"), but the parties disagree about whether H.B. 2579 impliedly amends or repeals provisions contained within the Act. To begin, we analyze the two statutes in light of the VPA. *See Cave Creek Unified Sch. Dist.*, 233 Ariz. at 7, ¶ 23 ("Although [the house bill] did not expressly state that it repealed, amended, or otherwise changed [the

initiative], we must consider its effect on the fundamental purposes underlying the VPA." (citation omitted)). "The intent of the VPA, construed from its text and structure, was to limit changes to voter-approved laws." *Id.*

¶11 A statute can be impliedly amended or repealed through "repugnancy" or "inconsistency" with a more recent and apparently conflicting statute. *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333, ¶ 29 (2001) (implied repeal); *Ariz. State Tax Comm'n v. Reiser*, 109 Ariz. 473, 479 (1973) (implied amendment). "An implied amendment is an act which purports to be independent, but which in substance alters, modifies, or adds to a prior act." *Cave Creek Unified Sch. Dist.*, 233 Ariz. at 7, ¶ 24 (quoting 1A Sutherland Statutory Construction § 22:13 (7th ed. 2012)).

¶12 The Minimum Wage Act empowered counties, cities, and towns to "regulate minimum wages *and benefits*," and authorized "the legislature or any other body to adopt any law or policy that requires payment of higher or supplemental wages or benefits, or that extends such protections to employers or employees not covered by this article." A.R.S. § 23-364(I) (emphasis added). H.B. 2579 explicitly removed from cities, towns, and other political subdivisions the authority to regulate "employee benefits, including nonwage compensation." A.R.S. § 23-204(A). H.B. 2579 defines nonwage compensation to include:

> [F]ringe benefits, welfare benefits, child or adult care plans, sick pay, vacation pay, severance pay, commissions, bonuses, retirement plan or pension contributions, other employment benefits provided in 29 United States Code § 2611 and other amounts promised to the employee that are more than the minimum compensation due an employee by reason of employment.

A.R.S. § 23-204(C). Therefore, if A.R.S. § 23-204, as amended by H.B. 2579, amends or repeals the Minimum Wage Act, it will have done so in violation of the VPA.

¶13 The State argues the Minimum Wage Act does not apply to nonwage employee benefits and accordingly does not grant counties, cities, and towns the power to regulate them. The Legislators, on the other hand, argue that by its terms, the Minimum Wage Act demonstrably grants counties, cities, and towns the power to regulate nonwage benefits. Therefore, to discern the constitutionality of H.B. 2579, we must determine whether H.B. 2579 and the Minimum Wage Act can be harmonized. This

analysis hinges on the meaning of the word "benefits" as used in the Minimum Wage Act.

¶14 The State contends that H.B. 2579 and the Minimum Wage Act can be read harmoniously because the term "benefits" has a different meaning in both statutes. H.B. 2579 defines "benefits" to include nonwage employee compensation. *See* A.R.S. § 23-204(A). Benefits is not defined in the Minimum Wage Act. *See* A.R.S. §§ 23-362, -363, -364; *see also State v. Dann*, 220 Ariz. 351, 368 (2009) ("When a word in a statute is undefined, courts apply the ordinary meaning of the term."). The State argues "benefits" means "the advantage or privilege something gives" and in the context of the Minimum Wage Act, "benefits" means only the benefits provided under the Minimum Wage Act—namely, the enforcement rights provided in A.R.S. § 23-364. The Legislators conversely argue "benefits" includes any "non-wage compensation." The superior court found that "the meaning proposed by the State may be a *permissible* meaning of 'benefits' according to a dictionary definition of the word, [but] it is not a *reasonable* meaning in light of the context of the word." We agree.

¶15 In statutory interpretation, associated words bear on one another's meaning. "[A] statutory term is interpreted in context of the accompanying words." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326, ¶ 13 (2011). In the context of the Minimum Wage Act, "benefits" is used twice—both times in conjunction with the word "wages," forming the phrases "minimum wages and benefits" and "minimum wages or benefits," respectively. Therefore, the word "benefits" has an associated, but separate meaning from the word "wages."

¶16 When used together, the only reasonable interpretation is that "wages" and "benefits" are complementary parts of employee compensation as a whole. *See* Black's Law Dictionary 343 (10th ed. 2014) ("*Compensation* consists of wages and benefits in return for services" and "includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and expense reimbursement." (citation omitted)); *see generally State v. Pena*, 235 Ariz. 277, 279, ¶ 6 (2014) ("Absent statutory definitions, courts . . . may look to dictionaries."). "[T]he words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *Ariz. ex rel. Brnovich v. Maricopa Cty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541, ¶ 7 (2018) (citation omitted). At oral argument in the superior court, the State conceded that "non-wage benefits received by an employee from an employer is the consistent historical meaning of the word 'benefits' when used in the syntactic setting of either

'minimum wages and benefits' or 'wages and benefits.'" It is clear from the text that by granting a county, city, or town the ability to "regulate minimum wages and benefits," the intent of the electorate was to grant these bodies the ability to regulate wages and nonwage benefits. The State's interpretation ignores the plain text of the statute and the association between the words "benefits" and "wages."

¶17            The State emphasizes that the other provisions of the Minimum Wage Act make no mention of benefits, including the substantive provision that sets the minimum wage. *See* A.R.S. § 23-363. Because the only provision that mentions benefits is the enforcement provision, § 23-364, the State argues "benefits" can only mean those benefits—*i.e.*, enforcement rights—that are provided under that provision. However, even considering the word "benefit" in the context of the Act—while not explicitly requiring the regulation of benefits in the substantive provision—it is reasonable that the electorate granted counties, cities, and towns the ability to further regulate minimum wages and benefits in the enforcement provision, as long as they do "not provide for a minimum wage lower than that prescribed in [the] article." A.R.S. § 23-363 sets a mandatory minimum wage, whereas the enforcement provision gives these bodies the *option* to further increase wages *and benefits*, rather than requiring them to do so.

¶18            The State further argues that the Minimum Wage Act uses "benefits" and "protections" interchangeably when it authorizes "the legislature or any other body to adopt any law or policy that requires payment of higher or supplemental wages or benefits, or that extends *such protections* to employers or employees not covered by this article." A.R.S. § 23-364(I) (emphasis added). First, the plain grammatical reading of this sentence is that "higher or supplemental wages" and "higher or supplemental . . . benefits" both are protections that the legislature or other body can extend to employers or employees not covered by the Minimum Wage Act.

¶19            Second, the State's argument that this provision uses "benefits" and "protections" interchangeably—and "benefits" encompasses only the minimum wage protections provided in this section—is not well taken. The State proposes only one definition of "benefits" and does not argue that "benefits" has a different meaning each time it is used in the statute. *See Obregon v. Indus. Comm'n*, 217 Ariz. 612, 616, ¶ 21 (App. 2008) ("It is a normal rule of statutory construction that identical words used in different parts of the same Act are intended to have the same meaning." (internal quotation and citation omitted)). Equating benefit to mean protections under the statute would lead to an impossible

grammatical difficulty. It is not logical for the statute to read: "A county, city, or town may by ordinance regulate minimum wages and *protections* within its geographic boundaries." It makes even less sense to say that the statute "shall not limit the authority of the legislature or any other body to adopt any law or policy that requires payment of higher or supplemental wages or *protections*," because protections are not paid in the sense that wages and benefits can be paid.

¶20 Third, the State argues that interpreting benefits to mean nonwage benefits renders the "higher or supplemental" language of the Minimum Wage Act superfluous because "it does not make sense to say that municipalities are free to 'require[]' payment of 'higher or supplemental' fringe benefits when the [Minimum Wage Act] does not require payment of any fringe benefits at all." A grammatical reading of the sentence reveals that the phrase "payment of higher or supplemental" applies to both "wages" and "benefits." There is nothing inherently prohibitive of a city passing a new law requiring payment of higher or supplemental nonwage benefits—where payment of benefits previously was not required—because payment of some benefits is higher than payment of no benefits. Further, the payment of nonwage benefits could be supplemental in reference to the payment of required wages.

¶21 In contrast, the Legislators' proposed definition of "benefits"—nonwage benefits received by an employee from an employer—reflects the ordinary and common meaning of the term when it is used in conjunction with wages and when looking at its plain meaning as it is used in the Act. Thus, because the meaning of the word "benefits" can be discerned from the plain text of the statute, the word "benefits" is not ambiguous.

¶22 The State next asks us to look beyond the statutory text itself, urging us to look at the title of the voter initiative and the title of the substantive provision in the Act, A.R.S. § 23-363, to conclude that the Act's purpose is to regulate wages, not nonwage benefits. The title and headings of statutes are permissible indicators of meaning but cannot override the text. *See State v. Eagle*, 196 Ariz. 188, 190, ¶ 7 (2000) (noting that where an ambiguity exists, the title of a statute may be used to aid in its interpretation, although headings are not part of the law itself). Because we determine the text is not ambiguous, we need not turn to the titles of the initiative or provisions to aid in interpreting the Minimum Wage Act.

¶23 The State argues the superior court erred by not considering other secondary methods of statutory construction beyond the ordinary

meaning of "benefits." When interpreting a statute, courts first look to the statute's plain language as "the most reliable indicator of its meaning." *Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 381, ¶ 13 (App. 2013) (citation omitted). When read in that fashion and the meaning of the statute is clear, our analysis ends. *See State ex rel. Romley v. Hauser*, 209 Ariz. 539, 541, ¶ 10 (2005) ("When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." (citation omitted)). The State urges the court to look at the legislative history of the Minimum Wage Act, to interpret the Act to avoid ERISA preemption issues and constitutional law difficulties, and to interpret the Act in a way that will not impermissibly change the law. Again, we need not address these secondary methods of statutory interpretation; because the text of the statute is unambiguous, our statutory interpretation stops at the plain meaning of the words. We look no further than the language of the statutes to conclude H.B. 2579 impliedly amends and repeals a portion of the Minimum Wage Act.

¶24 We are aware that the finding of an implied repeal of statutes is not favored, *UNUM Life Ins. Co.*, 200 Ariz. at 333, ¶ 28, but it is required when, as here, "conflicting statutes cannot be harmonized to give each effect and meaning." *Cave Creek Unified Sch. Dist.*, 233 Ariz. at 7, ¶ 24. H.B. 2579 explicitly stripped the ability of counties, cities, and towns to regulate nonwage employee benefits. A.R.S. § 23-204(A). The Minimum Wage Act specifically empowered counties, cities, and towns to regulate benefits, which we have found to mean nonwage benefits. H.B. 2579 explicitly prohibits what the Minimum Wage Act permits, and thus, the two statutes cannot be harmonized. Because H.B. 2579 impliedly amends and repeals a portion of the Minimum Wage Act, it violates the VPA's express limitations on legislative changes to voter-approved laws.

## III. Attorney Fees

¶25 The Legislators requested attorney fees in the amount of $33,450 under the private attorney general doctrine. The affidavit for attorney fees included time expended representing the Councilmembers and UCFW on the VPA claim, representing all three groups of plaintiffs for the home-rule claim, and opposing the State's motion to dismiss. The court ultimately dismissed the entire home-rule claim and the VPA claims brought by Councilmembers and UCFW.

¶26 We review an award of attorney fees under the private attorney general doctrine for an abuse of discretion. *Arnold v. Ariz. Dep't of*

*Health Services*, 160 Ariz. 593, 609 (1989). Attorney fees can be awarded under the private attorney general doctrine to "a party who has vindicated a right that: (1) benefits a large number of people; (2) requires private enforcement; and (3) is of societal importance." *Id.* "The purpose of the doctrine is to promote vindication of important public rights." *Id.* (internal quotation and citation omitted). The superior court awarded the Legislators all attorney fees they requested.

¶27        The State acknowledges that our supreme court's adoption of the private attorney general doctrine is binding authority. The State contends, however, that the Legislators are not entitled to an award of attorney fees for work on arguments on which they did not prevail and that the court should have reduced the attorney fees to exclude fees for work on opposing the motion to dismiss, which the Legislators lost. We agree.

¶28        When the result sought in the litigation is accomplished, "fees should be awarded for time spent even on unsuccessful legal theories. Where a party has achieved only partial or limited success, however, it would be unreasonable to award compensation for all hours expended, including time spent on . . . unsuccessful issues or claims." *Schweiger v. China Doll Rest. Inc.*, 138 Ariz. 183, 189 (App. 1983).

¶29        Here, the Legislators accomplished the result they sought to achieve—declaring H.B. 2579 unconstitutional. However, the superior court awarded fees for time spent representing plaintiffs on unsuccessful claims that were ultimately dismissed. The Legislators are not entitled to attorney fees for time spent on the unsuccessful home-rule claim nor for time spent representing the dismissed plaintiffs, UCFW and the Councilmembers. However, the Legislators were ultimately successful on their VPA claim, and that claim meets the criteria to award fees under the private attorney general doctrine.

¶30        First, the resolution of the litigation benefits a large number of people in the state, including all employees and employers subject to the Minimum Wage Act. The right to regulate wages and benefits belongs to counties, cities, and towns; thus, its vindication benefits large numbers of Arizonans. The Legislators in this case "sought no recovery for themselves and achieved no personal gain or advantage; they did not act for their own benefit or for the benefit of a particular class or group, but instead acted to vindicate the interests of the entire citizenry of the state." *Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 329 (App. 1993).

¶31        Second, the vindication of the right the Legislators asserted required a legal challenge to a statute adopted by the legislature and could only have been privately enforced. *See Ariz. Ctr. for Law in Pub. Int. v. Hassell*, 172 Ariz. 356, 371 (App. 1991). Finally, the vindication of the right asserted by the Legislators is of societal importance. The Legislators established the right of counties, cities, and towns to regulate nonwage benefits. By challenging the constitutionality of H.B. 2579, which took away this right, the Legislators ensured that these bodies could provide for regulation of nonwage benefits for a large number of employees within the state. The superior court erred in awarding attorney fees related to the home-rule claim as to all plaintiffs, the VPA claim as to the Councilmembers and UCFW, and related to the motion to dismiss. Accordingly, the Legislators are only entitled to attorney fees for time spent representing the successful group of plaintiffs on the VPA claim.

## CONCLUSION

¶32        We affirm the superior court's grant of summary judgment in favor of the Legislators. We vacate the award of attorney fees in favor of the Legislators and remand for a redetermination of the amount of the award consistent with this opinion. We award the Legislators their fees on appeal upon their compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.



AMY M. WOOD • Clerk of the Court
FILED:   AA